Consolidated case numbers 19-2217 and 19-2221 United States of America v. Kenneth Sadler and case number 20-1177 United States of America v. DeMarco Tempo 10 minutes for each defendant, 20 minutes for the plaintiff Mr. Burgess, you may proceed for the appellants May it please the court David Burgess for petitioner, or for appellant, Kenneth Sadler On behalf of Mr. Sadler, we've raised four issues on appeal in this matter First issue we raised was that the trial court erred when it allowed the government to introduce evidence of Mr. Sadler's 2012 conviction At trial, defense counsel did bring a motion to have the evidence in that case precluded from testimony or at least have an analysis under 404B as well as 403 rules of evidence that were that evidence because there was no real link that that evidence or the evidence of those convictions that occurred in a different city than this conspiracy occurred There was no evidence that linked that conviction in Sterling Heights to the poll conspiracy in the case that occurred on the east side of Detroit The government said that because the indictment included allegations from 2010 to 2016 that apparently anything Mr. Sadler did during that time was part of the conspiracy However, the facts in the case clearly dictate that there is no showing that Mr. Sadler's individual acts in Sterling Heights in 2012 had anything to do with the poll organization and the government, I believe, has still, even in their response, has failed to show that there's any correlation between Mr. Sadler's individual involvement in a case in 2012 and any link to the poll organization that allegedly occurred from 2010 to 2016 per the indictment And we believe the trial court should have either precluded that testimony outright or at least allowed it to be determined to be 404B and require the government to not only provide notice but have a hearing as it relates to its admissibility and the limitations on that admissibility Issue number two that we've raised is that we argue that the government should not have been allowed to call Mr. DeRay Elder who was Mr. Sadler's previous counsel Mr. Elder testified about conversations he had with Mr. Sadler We did file a motion to preclude his testimony The case was originally in front of Judge Cohn It then went to Judge Cox while the motion was pending The motion was never ruled on The court just ordered that Mr. Elder be allowed to testify And when he did so, obviously it prejudiced the jury We believe not only showing that Mr. Sadler had another attorney but that attorney's testifying for the government against him We believe that prejudicial effect probably convinced the jury that Mr. Sadler was already guilty even though he's presumed innocent during trial The third issue we raised, obviously, is we believe the court denied Mr. Sadler's Rule 29 motion in error Mr. Sadler at trial There was very little showing of Mr. Sadler's involvement in this polo organization Excuse me, there was no showing of Mr. Sadler's involvement in this polo organization The government argues that Mr. Sadler was involved even though there were 18 controlled buys in the case None of which involved Mr. Sadler There were no texts or any information that Mr. Sadler was involved No use of the phones prior to June 15th of 2016 And any action on that date, after the other members of the polo organization were arrested and Mr. Sadler grabbed apparently some of the phones in the case Any actions he took on the 15th were not in furtherance of the conspiracy The conspiracy had already ended And Mr. Sadler was only acting on his own without anybody involved with him So any allegations of a conspiracy occurring on the 15th we believe are in error So we do believe that the trial court did err when it ruled against the Rule 29 motion as well as we do believe the verdict is in error as well Counselor, what date do you say that the conspiracy ended? And what evidence indicates that the conspiracy ended when you say it did? Thank you, Your Honor It would be the defense's position, Judge, that there were multiple arrests on June 14th of 2016 The phones were not, I believe I have those dates correct The phones that were utilized by the polo organization prior to June 15th There was never any indication, any evidence presented that Mr. Sadler ever utilized those phones On June 15th, 2016, after everybody had been arrested One of those phones, one of those numbers was turned back on And Mr. Sadler, and there's no argument, I believe the record is pretty clear that Mr. Sadler probably wanted to belong to this There was some evidence that Mr. Sadler tried to grab phones, tried to get numbers but didn't appear to be successful and there's no evidence that he was during the conspiracy, Judge But we do take the position that he was, Mr. Sadler, on June 15th when that number was used to potentially That 2016 you're talking about? I'm sorry if I misspoke, yeah, that's correct, Your Honor, yes, that's correct, Judge But on June 15th, 2016, there's no evidence other than the fact that Mr. Sadler was acting alone on that date And there was no indication that he was conspiring with anyone else And he didn't commit any crimes on that date I don't even know if there was an intent to do anything other than screw around with someone on a phone However, if there was, there's no evidence that Mr. Sadler did anything but act alone on that particular date And we do contend that the conspiracy based on the arrest in this case ended the day before I know the government's going to say it continued However, there were no other people involved on the 15th And Mr. Sadler was arrested the same day on the 15th And again, prior to the 15th of June, there's no indication that Mr. Sadler ever utilized the phone numbers in question That were related, that were associated, excuse me, with the Polo Organization There were two numbers, I believe, actually there were three numbers at trial that were introduced But there was no indication prior to June 15th that Mr. Sadler was involved or ever utilized those phones Sorry, Judge Counsel, the evidence of heroin sales from 2012 that was admitted into evidence What do you, do you have anything to say about the appropriateness of the admission of that evidence? Your Honor, we do take the position that we don't think that evidence was appropriate We literally think that the government kind of threw everything at the wall in this case and see what stuck But we don't think there's any rhyme or reason to relate the, Mr. Sadler did not appear The officers that testified indicated that Mr. Sadler acted alone in 2012 That he did not, actually there was another female there But there was no association that to the Polo Organization The phone numbers were different, Your Honor The officers from Sterling Heights that arrested both detectives that arrested Mr. Sadler After, I believe, two controlled buys Indicated that there were no, they never heard of Polo Organization The phone numbers that were utilized by Polo were not in conjunction And the Polo sales, Judge, were all done within a mile area on the east side of Detroit I don't know how familiar the court is with geography But Sterling Heights is in a different county and approximately 15 miles from the area we're talking about here The area that the sales occurred, I do see my time has run out I know you're out of time, but you haven't said anything about the problem Well, the alleged problem with the jury instructions regarding the chain of distribution theory As it might have affected Mr. Sadler I can briefly speak on that if the court wants me to I'll put it briefly since your time is out Our fourth issue, obviously, is we think the court erred We think that there should have been a foreseeable requirement That the jury, instead of the instructions the jury did receive There should have been a foreseeable If you're going to enhance as they did against Mr. Sadler Especially with Mr. Sadler's alleged peripheral involvement in this case We do think that the court did err in not instructing as to foreseeability On that enhancement issue as to causing death Alright, thank you Alright, we'll hear from Mr. Komorski Thank you, good morning your honors I would like to reserve two minutes for rebuttal if I may I would indicate that Mr. Tempo has raised numerous arguments on his appeal However, due to my limited time I would like to focus on a very important issue Regarding the perpendicular enhancement that was applied to him under 804B1C As this court knows There were three alternative theories that the jurors were instructed on As to how they could apply this enhancement One was that Mr. Tempo acted as a principal The better The third one was that he would be convicted In the Hogan sphere, there is a theory that's such on standing opinion in this case Where a person can be held liable for foreseeable From other Hogan spheres than the Hogan sphere itself As we indicated in our brief prior to the trial Defense counsel objected specifically to this instruction being given With respect to the sentencing enhancement Way back in 2000 I believe Under United States v. Sweeney This court indicated that there had to be a showing of a part of the distribution chain For the overdose victims for this type of sentencing enhancement to apply In 2020 This court released the case People v. Ham That specifically held that a jury could not use a theory To apply 804B1C to death or any re-enhancements Now, I think it's quite clear that's what happened here Now, admittedly there were three alternative theories that were given to the jury But again, we don't know which theory the jury or particular jurors relied on Some of them could have relied on the Pinkerton theory All of them could have relied on the Pinkerton theory The fact is they were given that option when they shouldn't have been given that option And contrary to what the government indicates in its brief Defense counsel objected both before and during trial And we indicate where those objections came into play And even though the basis that we are raising on appeals Was a little different than what the initial objection was That did not ruin the argument in Ham Because that's exactly what happened in Ham as well Is that there was a general objection to the Pinkerton theory prior to trial And then on appeal they indicated that it could not be applied for the sentencing enhancement So the court already indicated that you can somewhat change the theory on appeal As long as the court was on notice prior to trial that the Pinkerton theory should not apply Now the other case that's cited by the government is United States v. Davis Where they indicate that this court somewhat narrowed Ham And indicated that the limiting instruction is not necessary When there's a selling directly to the victim And they argue that Mr. Temple was sold directly to the victim That's not entirely what Davis says What Davis said was that Ham did not apply at all Because Davis was not charged with a conspiracy under 846 And he was not held liable for a conspiracy theory under 804A In this case and in the Ham case both defendants were charged under that theory So the fact of the matter is Davis found that Ham did not apply Because there was no conspiracy alleged in the first place Whereas in this case there was a conspiracy clearly alleged Pinkerton was improperly given And because we don't know whether or not the jurors applied Pinkerton or not We can only assume that some of them may have That should result in reversal of the sentencing enhancement in a new trial for that And I would certainly open myself up for questions on that particular issue If this panel has any questions of me You may proceed Alright With respect to argument 2 I think that one is pretty straightforward It's our position that the statute is unconstitutionally vague Because it throws in either a sentencing requirement or a fine The use of the word for I think takes it away from the court As to whether or not they can impose a mandatory sentence Now the government has indicated in their responsive brief They cited to Burr, I think that's how you pronounce the United States Supreme Court case Where they indicated in a footnote that this use of the word for was obviously a scrivener's error But we don't know that Number one, we don't know if this was a scrivener's error or whether it was put in intentionally And number two, because they just mentioned it and passed it in a footnote That's really not a holding that the government can rely on Because that's at best Vicka that's being noted by the Supreme Court in its footnote It's not a holding that the government can rely on So Burr relies on that particular footnote clause And because the statute as it's currently written is unconstitutionally vague Because as the government stated, well a reasonable reading of the statute could be this But our position is a reasonable reading of the statute could be that That's what makes it vague And an unconstitutionally vague statute should require reversal as well Does the panel have any questions with regard to that particular issue? Any questions? No I think you can proceed With respect to my other issues, I would certainly rely on my brief I didn't want to take up too much time But if the panel has any questions on any of the other issues All right, thank you sir We'll hear from the government Mr. Hurley Good morning, Your Honors May it please the Court My name is Dan Hurley and I represent the United States Briefly on the Burridge issue, the Supreme Court did say that it's a Scrivener's error Not because it just thought it was a Scrivener's error But because the statute itself says And I'm quoting from Burridge here That the same subsection of the statute refers to the subparagraph Providing for a mandatory term of imprisonment If death or serious bodily injury occurs And so that's the Supreme Court saying Look, the statute itself says it's a mandatory term of imprisonment That's the authority that we rely on To say that the word or is a Scrivener's error Because the statute itself refers to a mandatory term of imprisonment The Burridge Court also noted that other courts of appeals have reached the same conclusion So we think that issue can be resolved on the basis simply of the language of the statute itself I want to turn to this jury instruction issue Because I think it is a difficult one It's not clear exactly what the defendants think the jury instructions should have said It seems like they think the phrase chain of distribution Should have been in the jury instructions in some way With respect to Pinkerton liability And an important point at the outset is We're only talking about Pinkerton liability If a defendant is not himself liable as a principal Our position with respect to Mr. Tempo Is that there didn't need to be any Pinkerton liability here There never needed to be a Pinkerton instruction And so any error in a Pinkerton instruction is absolutely harmless And the reason is they're his phones It's his organization He's the one who is taking the calls from the customers He's the one who's there for many of the transactions He's the one who is shown to be restocking the runners The guys on the street level who are actually handing the drugs To the customers in their cars as they pull up All of that is orchestrated by Tempo Tempo is restocking them Tempo is collecting the money And so there's no Pinkerton issue with respect to Tempo He is liable because he is there And it's his drug organization Start to finish This is all Tempo And so there can't be any error Which I'll talk about in a moment Even if there's error It's absolutely harmless with respect to Tempo Because he's responsible for every packet of heroin Every packet of fentanyl laced heroin That goes out The record is abundantly clear There were no sales Unless you called the phones Alright but the record is to Mr. Sadler Is a bit more problematic I agree your honor It's obviously not quite as overwhelming with respect to Sadler But I want to come back to the question What is the standard? If one looks at the Swiney or Swinney case It is clear that under the law of the circuit There is liability For actions of others That's the holding of Swinney Swinney says Pinkerton liability is available Under an 846 conviction In Swinney the district court had refused to apply that The government appealed And this court said Pinkerton liability applies But not the broadest Most aggressive, most expansive Form of Pinkerton liability But rather the standard that's set forth In 1B1.3 The relevant conduct section of the guidelines And that is an important distinction As the court knows Under the broadest form of Pinkerton liability The government could charge a drug conspiracy Starting in Mexico Crossing the border Chicago distributions Detroit distributions Pittsburgh distributions And the government could charge everyone involved in that From the packagers To the people who smuggled across the border To the people who distributed to the cities To the people who cut it To the people who handed it to the end users In each of those cities We could charge that all in one conspiracy And the guidelines Make clear That a defendant should not be responsible For everything That everyone in a conspiracy did But rather only what That defendant essentially Signed up for What was his role in the conspiracy If you look at 1B1.3 I think it's A1B It talks about The scope of the jointly undertaken Activity From what did the defendant understand If you look at the Jury instructions that were given For Pinkerton liability That's exactly what the District court told the jury To apply Now it didn't perfectly track 1B1.3 But it did say Among other things That you have to look at What this defendant Understood The conspiracy to involve The court did explicitly say That you have to consider From the point of view Of the defendant It said It would not be fair To hold the defendant responsible For anything beyond The fair scope Of what the defendant understood And that's paragraph 4 That takes us to the question of What there is in the record That indicates that Sadler Was involved in Or understood The events leading up to the Charge Absolutely your honor Even if I'm wrong that there is no Error under the jury instructions There's abundant Evidence that Sadler was involved I'll start with the phones So it is true that Mr. Sadler Started with the phones But he didn't grab the phones As Mr. Burgess suggested He transferred the phone numbers From the phones That Tempo had been using Tempo was arrested on June 14th And those phones were seized By the officers and they were in law enforcement Custody Didn't he try to transfer the numbers and it didn't go through He wasn't successful in that No your honor He went to a phone store I think it was a Metro PCS And he transferred Both numbers And that's important How does Sadler know That these are the two Numbers that the Organization is using To sell its drugs So he didn't just transfer the 3399 number That Tempo had been using all along He transferred That number and the 5598 number So Sadler had to know These are the numbers That are used to sell The drugs Only someone In the conspiracy Would know that The runners on the street don't know What number the customers are calling They certainly don't know Both of the numbers Sadler knew that Sadler also had to know The password, the account Anyone who's gotten a new phone Knows that when you Port your number over You have to be associated With the account You have to give a pin You have to give a password I couldn't walk into a phone store And say I would like to take over this number You've got to be Associated with that account And have that Inside information And so that also is strong evidence That Sadler was Right there with Tempo At the top of this org chart Now maybe not the very top Those things show that Mr. Sadler May or may not Be subject to being convicted For being in the conspiracy But if He's found guilty Only of conspiracy There still remains The issue of whether The jury Instructions were appropriate As to him Whether For conspiracy Under section 846 He would be subject to Pinkerton Co-conspiratorial liability In other words There has to be a chain Of distribution Instructions For Sadler Even if he's a member of the conspiracy Don't you think I don't your honor And here's why Chain of distribution Is just another way Of referring to or shorthand For the standard under 1B1.3 And the reason I say that Is that's what the Swiney court said The holding of Swiney And the court says About as directly as a court can say It says we hold That Pinkerton liability Is available Under the standards of 1B1.3 The court then goes on to say In other words Some showing as to the chain of distribution Now the court doesn't Expand what it means by chain of distribution But the court has already said It's the standard Under 1B1.3 relevant conduct For responsibility For acts of another And that is not limited to Someone who's hands on Someone who's making the transaction Someone who's cutting the drugs And the reason is If we could show that We're not talking Pinkerton liability We're not talking 1B1.3 But we know that has to be Available under the law Because that's what 846 says 846 says Someone convicted under conspiracy Is subject to the same penalties So there has to be room For someone like Sadler Even if he never touches the drugs Even if he's not involved In the end distribution If he never touches them He has to be There has to be liability Because that's the only time That we're talking about Pinkerton liability All the other times We're talking about liability As a principle or under 18 U.S.C. Section 2 And what does chain of distribution mean? It has to mean The 1B1.3 standard That's what the Swiney Court said Frankly that's what the Ham Court said So to the extent of the defendant's argument Is chain of distribution Means he's got to be Like a bucket brigade Handing it to someone who hands it to someone Who hands it to the end user That cannot be the standard Because of 846 And because that's not the standard Under the relevant conduct guidelines So getting back to what puts Mr. Sadler In a position where these distributions Were part of What he signed up for What his Conspiracy, what he thought he was involved with Well the fact that he Knows the phone numbers He's connected enough That he can port those phones over He starts reaching Out to people Sadler didn't passively wait for people to call him The evidence showed That Sadler started making phone calls Himself and he didn't call random Numbers. He called the most Frequent users The regular customers The evidence showed Sadler was reaching Out. Again If I just Ported a number to my phone I wouldn't know who to call How could Sadler know? And the only answer Is that Sadler was a part of this Whether or not he ever Touched the drugs But in fact the evidence showed that Sadler Played an integral role Sadler told the officers who were Transporting him the day after his arrest He could get them guys flipping Bricks of heroin Sadler is the guy who Was supplying the heroin And that's not our supposition That's his statement He can get guys Who have access to massive Quantities of heroin And he's not talking about Tempo Because Tempo was arrested the day before He's not talking about the street guys Because most of them were arrested the day before So clearly Sadler Is saying I have the access to the supply I'm the guy that gets the heroin There's another fact that supports that When Sadler's Residence You recall Sadler was staying at the Eastburn residence That's where he lived With Mione Melvin The woman and their child They found a gun there And that's something But they found no scopine there They found a significant quantity Of an opiate The only reason that he has that It's a cutting agent For heroin So the guy who says I can get massive quantities of heroin The only cutting agent That law enforcement found in this case Was the cutting agent That was found in Sadler's residence That is very Strong proof That Sadler's the supply guy And that's consistent With his role throughout this enterprise Sadler, back in 2010 Sadler told William Dennis I can get you large quantities of heroin He sold him 100 grams of heroin But he told him more than once He could get him large quantities of heroin So the only reason We're reading the evidence Sadler's the supply guy It goes beyond that When they did surveillance On the Eastburn I'm sorry, the Strasburg residence That's the stash house That's the locus of operations When they go from the supply guy To the streets That's where they put all the little baggies in the sack And they send the runners out With their little satchel of 50 packs To sell to the people in their cars Sadler was seen At that residence With all the other conspirators And that's a really important fact Not because it shows Sadler's Distributing the heroin That's not his role there No drug dealer Would allow a rival drug dealer Or an outsider In his stash house That's what Detective Bankowski testified to That's what common sense tells us If a rival drug dealer Knows your stash house And knows where your drugs Are hidden Knows where you're selling out of They might steal them They might set you up for robbery They might call the police And eliminate competition  So all of those reasons Make abundantly clear There's no way that Sadler Is an outsider to this conspiracy He just can't be They would never let him near Their stash house And yet Sadler is seen On more than one occasion At the stash house With other members of this conspiracy So from what he said After the arrest of Temple What he did After the arrest of Temple His role in the conspiracy From start to finish Sadler is all in On the enterprise That was moving large quantities Of heroin One bag at a time In this area That Temple's runners Were distributing Sadler's heroin And so there isn't Room for an argument That if only we had the words Chain of distribution In the jury instructions This all would have been different It almost doesn't matter What the instruction says Sadler is in it Joined at the hip With Temple In fact there's only two people In this case Who call themselves boss Temple and Sadler They each had tattoos That said boss None of the runners had that None of the runners knew the information To reboot None of the runners could do this And there's another fact Recall that There was a point in May When Temple went to Chicago And the phones were tracked to Chicago Temple came back And he did a circuit He did a circuit of the stash houses Of the locations That were involved In his distribution organization He went to the Strasburg house He went to the Hamburg drug house And he went to Eastburn What's Eastburn? That's where Sadler resided That's where Sadler Had the cutting agent I think there's no conclusion Other than Sadler was intimately involved in this conspiracy Start to finish According to William Dennis Sadler was there back in 2010 When Temple And William Dennis' son And Sadler Were distributing heroin Sadler was making the deliveries In 2012 Sadler was telling the officers On June 16th I have access to these Massive quantities of heroin And so it doesn't really matter What the Pinkerton instruction said Sadler would have been found responsible But I want to come back to Sadler, even if The court thinks the jury instruction Should have been worded slightly differently It still can't say Sadler had to touch the drugs It has to say What is provided for In the relevant conduct guideline And that means Sadler Because he's involved in this conspiracy So integrally He's responsible For the acts of everyone else Including the runners Who are giving it out to the people in their cars And giving it out to the people who overdosed And that's why under the law There's really no conclusion Other than Sadler is Responsible for those Overdose, for that death Because of his role in this Conspiracy I want to touch briefly On the issue of the Attorney testimony Mr. Burgess Indicated today that It was somehow Terribly unfair or prejudicial For The jury to hear that Mr. Sadler Had an earlier attorney in the case I don't know why that is There certainly wasn't a 403 objection And I don't know Why the jury would think anything Other than he had a lawyer Then and now he's at trial And he's got a good lawyer at trial So I think that's really An argument without merit There's still been no Privilege communication From Sadler to the lawyer That has been identified in this record And without that There's no question about a privilege applying I see that my time has expired Unless the panel has any further questions I'm happy to rest on a brief and ask that the court Affirm the judgment Thank you very much We'll now hear rebuttal arguments I guess Mr. Burgess, you're the First one up Thank you Again, may it please the court I think I found it interesting that When the government makes arguments And when they're not confined with facts Their argument becomes much better Much more involved Mr. Hurley kind of Made my point I think with his argument Is that the government basically without connection Or correlation pretty much just Threw whatever they had at the wall Against my client Mr. Sadler To try to see what stuck Mr. Hurley on the record did make a lot of Suppositions, assumed that there's some Passcode, nothing in the record About someone going to Metro store Or a passcode being used Or Mr. Sadler going to the Metro store To reactivate these phones on the 15th The evidence in this case And again Mr. Hurley did testify That Mr. Sadler was at Strasburg One of the stash houses There's a picture of him getting into a vehicle Near the Strasburg address That's the extent of the evidence In the record in this case And the fact that Mr. Sadler Hung around, he knew some of these people Him and Mr. Temple were half brothers So there's a relation there There's a lot of innocent Explanations as to why Mr. Sadler may be around Mr. Sadler may or may not want to involve himself in this But there's no evidence in the record That Mr. Sadler That Mr. Sadler was involved In this conspiracy. They have a 2012 Which I contend That is not even applicable To the Apollo conspiracy or does not even Fall into those grounds based on what I've already submitted And The fact that Mr. Sadler tries to pick up Where Mr. Temple left off, arguably speaking From the government's perspective on the 15th There's no indication he's working with anyone And there's nothing in the record where he's Reaching out to call anyone There's one of the officers The officer sees that the phone's turned back on Per the testimony at trial And calls the number To see what's going on And there's a bunch of calls from the same officer Who testified at trial Trying to set up a sale And it never comes to fruition And they eventually just track the phone On its GPS and just arrest Mr. Sadler At that point with no actual sale Or actual narcotics Being found at all during that Transaction when Mr. Sadler's arrested On June 15th of 2016 I see my time's expired Alright, thank you Mr. Burgess We'll hear from Mr. Komorski Thank you Your Honor I was also struck by Part of the government's argument Regarding the Pinkerton Instruction He said two things One, he said What defendant Do you think the jury Should have been instructed Well I think it's quite clear to me That in the case of Giffield The jury should have been instructed On Pinkerton theory of liability For the sentencing And I don't know how much clearer We can make that As far as his argument That the Pinkerton theory wasn't necessary Well that may very well be But the fact of the matter is They insisted on it being given It was objected to prior to trial During trial They still insisted on giving it And it was not only given But argued by the government In closing arguments They said they could find any of the theories Including the Pinkerton theory As being Equally viable So The fact of the matter is The Hamm case has clearly held That this type of instruction Is harmful And because it's harmful We cannot apply the harmless error standard In Hamm they found it to be harmful And it was clearly harmful In this case And I asked the court to So find and follow Hamm And all of the other cases that have followed Hamm Including Davis Which was totally inapplicable I don't know why the government even cited that case But the point is This instruction should have never been given We don't know If any of the jurors Followed that instruction But because a harmful instruction was given We have to assume that some of the jurors followed it And therefore Reverses should be done in that case Any other questions? No, thank you very much For your argument Actually there were Three fine arguments in here this morning In this case And We will take the case under submission And You'll hear from us in due time So thank you very much Oh yes, I was looking to see And I didn't see it You did see it though I'm telling you, I need my glasses We understand that both Mr. Burgess and Mr. Komorski Accepted Representation In this case Under the Criminal Justice Act And We are indebted to you for Representing your clients and being here this morning Alright The case will be submitted As I understand it That may be the last case for argument today Yes, your honor Alright